IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01652-BNB

MIKEAL GLENN STINE, # 55436-098

Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, and
BLAKE DAVIS, Warden ADX Florence,

Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 17 2010

GREGORY C. LANGHAM
CLERK

## ORDER OF DISMISSAL

Plaintiff, Mikeal Glenn Stine, a *pro se* prisoner litigant, is in the custody of the United States Bureau of Prisons (BOP) and currently is incarcerated at ADX Florence. Originally, Mr. Stine filed a petition for a writ of mandamus in the United States District Court for the District of Columbia (District of Columbia). The District of Columbia opened a miscellaneous case for the purpose of reviewing Mr. Stine's request to proceed pursuant to 28 U.S.C. § 1915 and subsequently denied his request to proceed pursuant to § 1915 because he is subject to filing restrictions under 28 U.S.C. § 1915(g) and because he failed to assert that he was in imminent danger of serious physical injury in the mandamus petition. Mr. Stine then filed a TRO/PI motion in the miscellaneous case that was unrelated to the mandamus petition. He did not include a separate complaint and an *in forma pauperis* motion or in the alternative payment of the $350.00 filing fee. However, due to the alleged urgency of Mr. Stine's TRO/PI

motion, the District of Columbia ordered the motion transferred to this Court.

On July 16, 2010, Magistrate Judge Boyd N. Boland entered an Order to Cure Deficiency in this case instructing Mr. Stine to file his claims on a Court-approved form used in filing prisoner complaints and to submit a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915. Simultaneously, Mr. Stine filed a Prisoner Complaint, a Verified Emergency Motion for TRO/Preliminary Injunction, and a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915. Subsequently, Mr. Stine filed an Amended Prisoner Complaint on July 29, 2010, and an Amended Verified Emergency Motion to TRO/Preliminary Injunction on August 2, 2010.

Although Mr. Stine is subject to 28 U.S.C. § 1915(g) filing restrictions and to further restrictions as stated in *Stine v. Lappin, et al.*, No. 07-cv-01839-WYD-KLM at Doc. Nos. 344 and 350 (D. Colo. Sept. 1, 2009) (unpublished), the Court directed Defendant Blake Davis, the warden where Mr. Stine currently is housed, to provide a statement to the Court addressing the current provisions being made to assure that Mr. Stine is not in imminent danger of serious physical harm by AB members who seek to harm him either while he is in his cell, at recreation, or being transported. The Court has reviewed with care Mr. Davis's statement and the attached Declaration by Patricia Rangel, Unit Manager for the General Population Units at ADX, where Mr. Stine currently is housed. The Court also has carefully reviewed all of the pleadings Mr. Stine has submitted to the Court, including the Letter he filed on August 9, 2010, and the Objection and two Motions he filed on August 11, 2010. For the reasons stated below, the Complaint and action will be dismissed because Mr. Stine is restricted from proceeding pursuant to § 1915 and from filing this action.

In relevant part, § 1915 provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Mr. Stine has filed more than three actions in a court of the United States while he was incarcerated or detained in any facility that were dismissed as frivolous or for failure to state a claim. *Stine v. Collins, et al.*, No. 08-cv-00298-ZLW (D. Colo. Mar. 4, 2008) (dismissed as frivolous and malicious under 28 U.S.C. § 1915(e)(2)(B)(i)), *aff'd*, No. 08-1078 (10th Cir. June 4, 2008) (district court's dismissal counts as a strike under 28 U.S.C. § 1915(g)); *Stine v. Wiley, et al*, No. 07-cv-00102-ZLW (D. Colo. Feb. 8, 2007) (dismissed as frivolous and malicious under 28 U.S.C. § 1915(e)(2)(B)(i)); *Stine v. Reeves*, No. 07-cv-00581-PGR-MHB (D. Ariz. Apr. 2, 2007) (dismissed for failure to state a claim within the purview of 28 U.S.C. § 1915(g)).

To determine whether Mr. Stine is in imminent danger of serious physical injury, the Court looks to the allegations in Mr. Stine's Complaint. *See Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006). In addition, the Court liberally construes Mr. Stine's Complaint, accepting the allegations as true. *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (noting that the court construe "a pro se complaint liberally" and "must accept the allegations of the complaint as true") (quotation marks omitted). In order to meet the "imminent danger" requirement, "the harm must be

imminent or occurring at the time the complaint is filed." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). In other words, allegations of past injury or harm are insufficient, *see id.*, as are vague and conclusory assertions of harm, *see White v. Colorado*, 157 F.3d 1226, 1231 (10th Cir. 1998). To fall within the exception, Mr. Stine's Complaint must therefore contain "*specific* fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (emphasis added).

In the instant action, Mr. Stine argues that he is an ex-member of the Aryan Brotherhood (AB) and has cooperated with law enforcement against its members. Mr. Stine further asserts that the BOP refuses to acknowledge that he no longer is a member of the AB and continues to transport and house him with known AB members. Mr. Stine contends that on three prior occasions[1] he was attacked by AB members and fears that he will be attacked again if he is moved to the "Z" Unit, which is a general population unit. Mr. Stine requests that the Court require the BOP to establish a protective custody unit so that he and other inmates will be safe.

In Mr. Stine's Complaint, TRO/Preliminary Injunction, Amended Complaint, and Amended TRO/Preliminary Injunction, Mr. Stine asserts that he is being moved to the "Z" Unit where members of the AB are housed and will have access to him with the intent to murder him or at least harm him. The Declaration provided by Ms. Rangel

---

[1] Although Mr. Stine claims he was attacked on three prior occasions, he does not assert where and when the three attacks took place. He also fails to assert who committed the assaults and where the responsible inmates are housed.

4

states that Mr. Stine currently is housed in the "D" Unit where he is housed in a single cell. (Statement, Ex. A at 5.) Ms. Rangel also indicates in the Declaration that Mr. Stine has a separation assignment from one inmate at the ADX, but the inmate is not housed in the "D" Unit. (*Id.* at 5.) Ms. Rangel further attests that staff and inmates in the General Population or Special Housing Units are separated by a barred grille and if interaction occurs outside of a cell the inmate is restrained, and one staff member controls the inmate while another staff member carries a baton. (*Id.* at 4.) Furthermore, the only interaction between two inmates without a barrier is between those inmates housed in the Step-Down Program Units, and Mr. Stine does not qualify at this time for placement in the Step-Down Program. (*Id.* at 5.) Ms. Rangel further asserts that at no time are inmates allowed to move within the institution without some form of supervision and generally remain in their cells twenty-one to twenty-three hours per day. (*Id.* at 3.) Furthermore, inmates are not allowed unmonitored personal contact with staff or other inmates, and the ADX is the most secure facility in the BOP. (*Id.* at 2-3.) Finally, recreation is conducted in separate recreation cages that are separated from another inmate's recreation area by heavy-duty fencing, and meals, programming, and showering take place in an inmate's cell. (*Id.* at 3-4.)

Mr. Stine's claims of imminent danger have been addressed previously, in *Stine v. Wiley*, No. 06-cv-02105-WYD-BNB (D. Colo. May 4, 2007) (dismissed voluntarily by Mr. Stine). In Case No. 06-cv-02105, Chief Judge Wiley Y. Daniel held a hearing on Mr. Stine's motion for temporary restraining order. Case No. 06-cv-02105-WYD-BNB at Doc. Nos. 127 and 128. At the conclusion of the hearing, on January 19, 2007, Chief

Judge Daniel determined that Mr. Stine had renounced his membership in the AB and at the time of the hearing was preparing to testify against a member of the AB in a trial in California. Doc. No. 128 at 163. Chief Judge Daniel further determined that although Mr. Stine was housed within two to three cells from two other inmates who were convicted of racketeering and murder after the trial in California and are capable of ordering a "hit" against another inmate and most likely having the hit carried out, there was not an adequate showing at the time of the hearing that someone had the present ability to harm Mr. Stine. *Id.* at 164.

Although Mr. Stine asserts that events have happened since the hearing that will show BOP officials provided false testimony at the hearing, Mr. Stine fails to assert specific facts regarding his current safety concerns. Mr. Stine's claims involve other inmates that have been attacked since the hearing and are not supportive of his being in imminent danger of serious physical injury where he currently is housed.

The Court also notes that at the time of the hearing on January 19, 2007, Mr. Stine was housed in the "Z" Unit, within two cells from an AB member, but when prison staff attempted to move him from the "Z" Unit he refused to be moved and at his own choosing elected to remain housed near the AB member. *Id.* at 160. Mr. Stine does not deny this finding. The Court further notes that during the January 2007 hearing evidence was provided by defendants showing that it would be almost impossible for another inmate to murder Mr. Stine while he was in "Z" Unit because he was housed in a single-cell, recreated alone, and was escorted by two guards without other inmates when he went to and from recreation. *Id.* at 161-62.

Although Mr. Stine asserts in general that prison staff refuses to remove his AB affiliation on his prison record, which results in the possibility that he may be housed around or transported with AB members, he does not assert that if he were housed in the "D" Unit he would be required to recreate or be housed in a cell or transported with AB-affiliated inmates. Mr. Stine does identify several incidents involving other inmates being attacked who possibly disaffiliated from the AB. (Compl. (Doc. No. 10) and Am. Compl. (Doc. No. 16).) He also describes other incidents including: (1) an inmate picking a lock to a connecting recreation cage to access another inmate; (2) a cell window being broken and an inmate worker spearing another inmate with a broom through the broken window; (3) darts soaked in body waste being shot at inmates by other inmates; and (4) a cell door being inadvertently opened by a prison guard and allowing another inmate into an inmate's cell. Mr. Stine, however, fails to assert where the inmates who disaffiliated from the AB were housed and where the four separate incidents regarding a picked lock, a broken window, darts, and inadvertent opening of a cell door took place. None of the incidents involved Mr. Stine, however.

Mr. Stine asserts in the original Complaint that six AB members were housed in the "Z" Unit from May to November 2009, apparently at the same time he was housed there, and that they attempted to gain access to him. (*Id.* and Am. Compl. at 6.) During the time Mr. Stine was housed in the "Z" Unit from May to November 2009, he did not complain to the Court about any concerns he had regarding AB members obtaining access to him. Mr. Stine also does not assert any details about the alleged attempt by AB members to obtain access to him, including who the individuals were, how the individuals tried to access him, and where these individuals now are housed.

Mr. Stine further does not state that any inmate has tried to pick a lock to the recreation cage while he was participating in recreation, that the window on his cell was broken, that he has been hit by a dart soaked in body waste, or that his cell door has been inadvertently opened by a prison guard allowing another inmate into his cell. Mr. Stine fails to specifically state how he would be in imminent danger of serious physical harm if he was housed in the "D" Unit.

The only claim Mr. Stine asserts regarding his previous placement in the "D" Unit is asserted in the first Complaint he filed in this action. (Compl. at 10.) Mr. Stine asserts that while he was housed in the "D" Unit inmate Silverstein made daily threats about his life and the lives of his family members. Although Mr. Stine asserts that everyday at recreation he was spat on and told he was going to die while he was housed at the "D" Unit, he does not assert who besides Mr. Silverstein threatened his life and spat on him, nor does he allege whether inmate Silverstein still is housed in the "D" Unit.

Mr. Stine's claims fail to state specific factual allegations of ongoing physical injury. Mr. Stine does not assert a pattern of misconduct evidencing the likelihood of imminent serious physical injury. He simply states that he **could** be placed in the same vehicle for transport or in the same housing unit with AB members; he does not state with specificity how members of the AB would have access to him in the "D" Unit, where he currently is housed, which would result in imminent danger of serious physical harm. Therefore, because Mr. Stine fails to assert that he is in imminent danger and because he has filed at least three actions that were dismissed as legally frivolous or for failure to state a claim, he is restricted from proceeding pursuant to 28 U.S.C. § 1915.

Mr. Stine also is subject to the filing restrictions entered in *Stine v. Lappin, et al.*, No. 07-cv-01839-WYD-KLM at Doc. Nos. 344 and 350 (D. Colo. Sept. 1, 2009) (unpublished). Mr. Stine has failed to comply with these restrictions. Although Mr. Stine filed his claims on a Court-approved form, he has failed to file a "Petition Pursuant to Court Order Seeking Leave to File a *Pro Se* Action," and an affidavit as he is required to do pursuant to Case No. 07-cv-01839-WYD.

Mr. Stine asserts that he did not receive a copy of the recommendation entered by the magistrate judge in Case No. 07-cv-01839, which contains the details of his filing restrictions. Mr. Stine's claims that he did not receive his mail from the Court were found to be incredible, specifically that he did not receive a copy of the report and recommendation in Case No. 07-cv-01839-WYD-KLM, which was entered on June 25, 2009. *See Stine v. Lappin, et al.* at Doc. No. 357. The Court also notes that on Page Two of the Letter (Doc. No. 22) Mr. Stine has submitted to the Court in this case, and alleges to have sent to President Obama, he states that the BOP staff only withheld correspondence to him from this Court from January 4 through February 19, 2009. Mr. Stine makes no claim in the Letter to President Obama that his mail was being withheld at the time the recommendation was entered in Case No. 07-cv-01839 and would have been sent to him.

Mr. Stine has had available to him the specifics of his filing restrictions for over a year. Rather than comply with the restrictions, he has sought to file new actions in other federal district courts where he hoped the courts would not be aware of his restrictions. Mr. Stine has had sufficient time to compile the information necessary for

him to file a complaint with this Court in keeping with Case No. 07-cv-01839-WYD. Mr. Stine also now concedes that he has a copy of the recommendation in Case No. 07-cv-01839-WYD. (Doc. No. 23 at 3.)

Also, Mr. Stine claims that he is not able to keep the records of all of his cases in his cell for the purpose of complying with the restrictions set forth in Case No. 07-cv-01839-WYD. Mr. Stine does not need continuous access to all closed case records to comply with the details of his filing restrictions. Mr. Stine has a list of all of the cases he has filed not only in Colorado but also in the federal district courts in Texas, Arizona, Florida, South Carolina, and Missouri, and in the Ninth and Tenth Circuits, which he attached to the Complaints he filed in this case. Furthermore, Mr. Stine identified and discussed the issues raised in at least two of his previous cases, including Case Nos. 06-cv-02105-WYD-KLM and 07-cv-01839-WYD-KLM, in each of the pleadings he has submitted in this case. If Mr. Stine had begun the process of determining the names of parties and issues raised in each of cases at the time the recommendation was entered in Case No. 07-cv-01839 he would have been able to provide in this case the required information in keeping with the filing restrictions set forth in Case No. 07-cv-01839.

Finally, with respect to Mr. Stine's claim that he has "thoughts of suicide" and that neither the Court nor the BOP care about the many deaths their "nepotism" causes, the Court over the past three years has provided abundant opportunities for Mr. Stine to present his ongoing claims and has utilized substantial judicial resources to determine whether the treatment he has received from the BOP is unconstitutional. Mr. Stine has abused the judicial process by continually flooding the Court with unnecessary, malicious, and false filings. In this case alone, Mr. Stine has submitted at least eleven

pleadings all of which raise the same claims. A determination regarding Mr. Stine's veracity was made by the magistrate judge in Case No. 07-cv-01839-WYD, Document No. 344, and accepted by Chief Judge Wiley Y. Daniel, finding that Mr. Stine has submitted false filings to the Court and has solicited other inmates to lie on his behalf.

Nonetheless, as stated above, Mr. Stine is not housed in the "Z" Unit, which is the basis for his claims. The Court, therefore, finds that Mr. Stine is not in imminent danger of serious physical injury and that he has failed to comply with the filing restrictions he is subject to under Case No. 07-cv-01839-WYD. Dismissal of the instant action is appropriate. Accordingly, it is

ORDERED that the Complaint and action are dismissed without prejudice. It is FURTHER ORDERED that all pending motions are denied as moot.

DATED at Denver, Colorado, this __17th__ day of __August__, 2010.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge, for
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**CERTIFICATE OF MAILING**

Civil Action No. 10-cv-01652-BNB

Mikeal Glenn Stine
Reg. No. 55436-098
ADX – Florence
PO Box 8500
Florence, CO 81226

    I hereby certify that I have mailed a copy of the **ORDER AND JUDGMENT** to the above-named individuals on  8/17/10

GREGORY C. LANGHAM, CLERK

By: _____
      Deputy Clerk